# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**PRIMERICA LIFE INSURANCE COMPANY,**

    **Plaintiff,**

v.

**BARBARA FRANTZ and
PATRICK C. FRANTZ,**

    **Defendants.**

Case No. 18-cv-2469-CM-KGG

## MEMORANDUM AND ORDER

Plaintiff Primerica Life Insurance Company filed this rule interpleader action to facilitate the proper distribution of a $150,000 life insurance policy benefit to either of two claimants: defendant Barbara Frantz, the insured's designated primary beneficiary, or defendant Patrick C. Frantz, the insured's designated contingent beneficiary. The matter is presently before the court on plaintiff's Motion To Deposit Policy Benefit Into The Court's Registry And For Interpleader Relief. (Doc. 13). For the reasons discussed below, the court grants plaintiff's motion.

### I.    Motion to Deposit Funds

Plaintiff's motion first seeks to deposit the policy benefit into the court's registry. In its discretion, a court may allow a party to deposit a sum of money with the court, "whether or not that party claims any of it," if any part of the sought-after relief involves disposition of the sum of money. Fed. R. Civ. P. 67(a); *see also Garrick v. Weaver*, 888 F.2d 687, 694 (10th Cir. 1989). Here, plaintiff disclaims any interest in the policy benefit but requests the court's determination as to which defendant's competing claims entitle them to the benefit. Neither defendant objects to plaintiff's deposit request. A filing construed to be an answer by defendant Barbara Frantz, in fact, affirmatively requests the policy's

-1-

benefits "be held by the court as trustee." (Doc. 12, at 1). Under the authority of Rule 67 of the Federal Rules of Civil Procedure, therefore, the court grants plaintiff leave to deposit the policy benefit and any interest applicable under law with the court's registry. *See also* 7 Charles Allen Wright et al., *Federal Practice and Procedure* § 1716 (3d ed. 2001) (stating that "the general equitable powers of the court permit it to receive a deposit," which "can be made in accordance with Rule 67").

## II. Interpleader Relief

Plaintiff next requests interpleader relief under Rule 22 of the Federal Rules of Civil Procedure. Granting that relief as requested would involve: (1) discharging plaintiff from further liability with respect to the at-issue policy; (2) dismissing plaintiff from this action; and (3) enjoining defendants (and those who may make claims by or through them) from continuing or bringing any action against plaintiff (or its representatives or agents) concerning the right to and distribution of the policy benefit.

"Interpleader . . . under Rule 22 . . . affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 Wright et al., § 1704 (3d ed. 2001); *see also In re Millennium Multiple Employer Welfare Ben. Plan*, 772 F.3d 634, 639 (10th Cir. 2014) (quoting same in context of statutory interpleader claim). Courts resolve an interpleader action according to a two-step process. *Eighth & Jackson Inv. Group v. Kaw Valley Bank*, No. 12-4075-RDR, 2013 WL 183753, at *2 (D. Kan. Jan. 17, 2013) (citation omitted). Interpleader's first step requires the court to determine whether the interpleader prerequisites are met and, if so, "whether to discharge the stakeholder from further liability to the claimants." *Id.*; *see also* 7 Wright et al., § 1714 (3d ed. 2001). If met, interpleader's second step involves determining the claimant's respective rights to the disputed fund. *Eighth & Jackson Inv. Group*, 2013 WL 183753 at *2; *see also* 7 Wright et al., § 1714 (3d ed. 2001). Plaintiff's present motion asks the court to take only the first step.

As the party invoking rule interpleader, plaintiff bears the burden to show that its concerns of defending multiple adverse claims directed against a single fund are legitimate.[1] *See Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) ("In the first state, the district court decides whether the requirements for rule . . . interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund."); 7 Wright et al., §§ 1704, 1714 (3d ed. 2001) (same; also stating that the party seeking interpleader bears the burden to satisfy the interpleader requirements).

Here, plaintiff's concern is legitimate. This action concerns a single fund—insured decedent Gary Patrick Frantz's life insurance policy benefit. Defendant Barbara Frantz and defendant Patrick C. Frantz adversely claim exclusive entitlement to the policy benefit. Defendant Barbara Frantz claims entitlement as the designated primary beneficiary. A jury, however, has convicted defendant Barbara Frantz of homicide in connection with the insured's death. Defendant Barbara Frantz disputes the jury's verdict, pursues an appeal to overturn her conviction, and insists that defendant Patrick C. Frantz instead bears responsibility for the insured's death. Defendant Patrick C. Frantz, however, denies any responsibility for the insured's death. He claims entitlement as the policy's designated contingent beneficiary, alleging not only that that defendant Barbara Frantz's homicide conviction bars her from receiving the benefit but also that she renounced any right to the benefit under the terms of a separation agreement she and the decedent previously executed. Whatever the merit to these claims, they are not

---

[1] It also can be important in rule interpleader actions to consider the court's subject matter jurisdiction and whether any equitable concerns disfavor allowing interpleader. *See United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). "Unlike statutory interpleader actions under 28 U.S.C. § 1335, '[i]nterpleader actions under Rule 22 . . . must be based upon the general jurisdiction statutes applicable to civil actions." *Arnold v. KJD Real Estate, LLC*, 752 F.3d 704 (7th Cir. 2014) (quoting 7 Wright et al., § 1710 (3d ed. 1998 & Supp. 2010)); *Eighth & Jackson Inv. Group*, 2013 WL 183753 at *2–*3 (illustrating the jurisdictional differences between statutory and rule interpleader). Here, however, no party disputes this court's subject matter jurisdiction. Indeed, jurisdiction exists under 28 U.S.C. § 1332 as the plaintiff-stakeholder—a company organized under the laws of Tennessee with Georgia as its principal place of business—is diverse from the Kansas defendant-claimants and the value of the disputed fund exceeds $75,000. *See* 7 Wright et al., § 1710 (3d ed. 2001). Similarly, no party raises any equity-based objection to plaintiff's invocation of rule interpleader. Consequently, these factors also favor determining that plaintiff has properly invoked interpleader.

so lacking in substance—or so clear as to make proper distribution of the funds sufficiently certain—that plaintiff's concern over incorrect distribution or defending multiple claims is unjustified. Plaintiff's invocation of interpleader is appropriate. *See Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414 (D. Kan. 1997) (approving interpleader to settle dispute concerning proceeds of a life insurance policy where primary beneficiary was a suspect in the insured's murder).

Having determined that plaintiff properly invoked rule interpleader, the court further determines that granting plaintiff's requested interpleader relief is appropriate.

> Where an insurance company is a mere stakeholder and can contribute nothing toward resolution of the issues between the other parties, its interpleader action is properly filed, and no genuine issue exists as to its rights and liabilities, "it should be discharged from any and all liability arising out of or based on the policies involved, except to pay the proceeds of such policies to the party or parties ultimately adjudged to be entitled thereto." *Rosenberger v. Northwestern Mut. Life Ins. Co.*, 176 F. Supp. 379, 385 (D. Kan. 1959), *modified* 182 F. Supp. 633 (D. Kan. 1960). *See Nationwide Mut. Ins. Co. v. Eckman*, 555 F. Supp. 775, 777 (D. Del. 1983); *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3, 5 (3d Cir. 1963) (When a plaintiff in interpleader has paid the amount of his admitted debt into court and, after notice and opportunity to be heard, the claimants have been ordered to interplead, the law normally regards the plaintiff as having discharged his full responsibility in the premises and "the court often enters an order finally relieving the plaintiff of further responsibility and permanently enjoining the claimants from harassing him.").

*Am. Home Life Ins. Co. v. Barber*, No. 02-4168-SAC, 2003 WL 21289986, at *2 (D. Kan. May 16, 2003); *see also* 7 Wright et al., § 1717 (3d ed. 2001) (discussing, in part, a court's authority to issue injunctions in rule interpleader cases). Plaintiff, as just discussed, has properly filed this interpleader action. Plaintiff has conceded its liability to pay the policy benefit to the proper beneficiary, whoever the court determines that to be. And to facilitate proper payment, plaintiff has requested to deposit and the court has agreed to accept the policy benefit into its registry. Plaintiff, therefore, is a disinterested stakeholder entitled to interpleader relief. Upon deposit of the policy benefit and, as discussed more fully below, final resolution of plaintiff's claim to attorneys' fees, the court will issue an order: (1) discharging plaintiff from all further liability to defendants concerning Gary Patrick Frantz's life

insurance policy; (2) dismissing plaintiff from this action; and (3) enjoining defendants from taking any further action against plaintiff regarding the policy.

**III. Attorneys' Fees**

Plaintiff also requests reasonable costs and attorneys' fees associated with filing this interpleader action. Defendant Patrick C. Frantz objects to assessing any costs or fees against the benefit. Each party provides authority from this district supporting its position. Plaintiff requests the court award it fees under the general rule that "[w]here the stakeholder is disinterested, i.e., does not claim any right to the fund, concedes its liability in full, deposits the fund in court, seeks discharge, and does not appear to the court to be culpable, it is appropriate and equitable to allow fees and costs from the fund." *Irwin v. Principal Life Ins. Co.*, 404 F. Supp. 2d 1271, 1278 (D. Kan. 2005) (citations omitted). Defendant Patrick C. Frantz, in contrast, urges the court to deny plaintiff's request on the basis that "'[t]he insurer may not transfer part of the ordinary costs of doing business to the insured by bringing an interpleader action.'" *Higgs*, 962 F. Supp. at 1414. Ultimately, "[t]he award of fees and costs to an interpleader plaintiff, or 'stakeholder', is an equitable matter that lies within the discretion of the trial court." *Transamerica Premier Ins. Co. v. Growney*, 70 F.3d 123, 1995 WL 675368, at *1 (10th Cir. Nov. 13, 1995)

A closer look at *Higgs* is necessary to understand why the court will not follow its result in this case. *Higgs* involved an insurer-initiated interpleader action concerning adverse claims to life insurance proceeds where the designated primary beneficiary was under investigation as a suspect in the insured's death. *Higgs*, 962 F. Supp. at 1414. In deciding not to award fees, the court touched on three reasons for its decision. First, it noted its belief that the insurer "is not merely a bystander; rather, it is in the business of distributing proceeds from insurance policies." *Id.* Second, the court observed that the interpleader process benefits the insurer "because they satisfy a self interest in not paying the wrong beneficiary by

-5-

filing an interpleader" *Id.* 1414–15 (quotation omitted). Third, the court relied on the fact that the insurer's entitlement to the interpleader process "presented a close question," presumably based on the fact the designated primary beneficiary was simply a suspect in the insured's murder and evidence of her involvement in the killing was "not nearly as much" as in other like cases. *Id.*

The justifications deemed persuasive in *Higgs* are, in the exercise of this court's discretion, unpersuasive. Initially, the Tenth Circuit has never explicitly embraced the first (cost-of-business) and second (self-interest) rationales relied on by *Higgs*. *See Transamerica*, 1995 WL 675368, at *2 n.3 (explicitly reserving the question of whether to recognize the cost-of-business exception to the interpleader fee rule); *Barber*, 2003 WL 21289986 at *4 (declining to apply the cost-of-business exception at it "has not been established by the Tenth Circuit"). Those rationales, moreover, arguably are present in every insurer-initiated interpleader case involving policy proceeds. That is, insurers are in the business of distributing proceeds and do—like all other stakeholders—benefit from the interpleader process. But this court disagrees with the proposition, implied by *Higgs*, that being in the business of distributing proceeds *necessarily* makes the insurer less than a mere bystander or makes the costs of distributing proceeds under a particular policy ordinary. Each case and its equities vary. Wright, Miller, and their *Federal Practice and Procedure* co-authors—cited by *Higgs*—make these very points in criticizing the cost-of-business and self-interest rationales that decisions like *Higgs* accept:

> Insofar as these [self-interest rationale] decisions rest on the notion that the stakeholder benefits by being discharged, they are wrongly decided because all stakeholders benefit by being able to use interpleader and that alone does not negate the equitable considerations supporting an award of attorney fees. Further, the cost-of-business rationale fails to recognize that other equitable concerns should be consulted in determination whether fees or costs are warranted.

7 Wright et al., § 1719 (3d ed. 2001). As the criticism continues, these rationales overlook the important equitable concern to make the stakeholder whole. *Id.*; *c.f. Transamerica*, 1995 WL 675368, at *1 ("The rationale for the award is that the plaintiff has, at its own expense, facilitated the efficient resolution of

a dispute in which it has no interest (other than avoiding liability for an erroneous distribution of the stake), to the benefit of the competing claimants—the true disputants—who should be able to cover the typically minor expense involved out of the fund distributed to them."). Equity justifies awarding the stakeholder reasonable costs and fees, therefore, unless the stakeholder either "contributed to the need for interpleader by acting in bad faith or by unduly delaying in seeking relief" or prematurely sought interpleader "without sufficient basis for believing that it will be subjected to multiple vexation." *Id.* In this case, defendants have made no claims that plaintiff has engaged in inequitable conduct of this type.

Notwithstanding these criticisms, *Higgs*' third justification is absent here. In this case, plaintiff's entitlement to interpleader does not present the same "close question" that persuaded the *Higgs* court to deny plaintiff requested fees. This case involves added complexity that makes interpleader more obviously appropriate. In *Higgs*, no allegations implicated the contingent beneficiaries in the insured's death and the evidence implicating the primary beneficiary was "not nearly as much" as existed in other like cases. 962 F. Supp. at 1414. Here, both defendants contend the other bears responsibility for the insured's death. And while defendant Barbara Frantz apparently has been found guilty with respect to the insured's death, that conviction is under appeal and challenged by proffered evidence implicating Patrick C. Frantz. The potential that either or both of these claimants—not just one claimant, as in *Higgs*—bears any responsibility for the insured's death makes the risk of erroneous distribution and/or vexatious litigation greater than existed in *Higgs*. *C.f. Harper v. Prudential Ins. Co.*, 662 P.2d 1264, 1271, 233 Kan. 358 (1983) (recognizing that, under Kansas common law, life insurance policy proceeds are irrecoverable even by a beneficiary who feloniously "killed the insured but has not been convicted of the crime"). This case also has the added complexity that terms of a separation agreement further obscure the parties' respective entitlement or disentitlement to the proceeds. The combination of these uncertainties present a number of payment scenarios simply not faced by the insurer in *Higgs*.

For all these reasons, the court determines it will follow here "the 'common practice' of reimbursing an interpleader plaintiff's litigation costs out of the fund on deposit with the court." *Transamerica*, 1995 WL 675368 at *1 (quotation omitted). To recover such costs and fees, Plaintiffs are directed to follow the procedures outlined in Federal Rule of Civil Procedure 54 and D. Kan. Rule 54.2.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Deposit Policy Benefit Into the Court's Registry And For Interpleader Relief (Doc. 13) be granted. Plaintiff shall deposit into the court's registry the entire proceeds of the policy at issue ($150,000) plus any applicable interest that has accrued under Kan. Stat. Ann. § 40-447 or other applicable law to the date of the deposit. Upon proof of such deposit and resolution of plaintiff's request for fees, the court will dismiss plaintiff and issue an injunction prohibiting defendants from taking further action on the policy against plaintiff. Plaintiff is entitled to its reasonable attorneys' fees and costs associated with filing this interpleader action, which it may recover only by following the procedures outlined in Federal Rule of Civil Procedure 54 and D. Kan. Rule 54.2.

**IT IS FURTHER ORDERED** that upon deposit of the funds by plaintiff, the Clerk is hereby ordered to deposit the funds in a money market account or other instrument at the prevailing rate of interest at a federally approved financial institution. The initial investment is subject to the collateral provisions of Treasury Circular 176. The clerk shall deduct the administrative registry fee, set by the Director of the Administrative Office of the U.S. Courts at ten percent of the interest earned or as indicated based on the amount and time of deposit into the court, without further order of the court. Said fee is authorized by the Judicial Conference of the United States.

Dated March 6, 2019, at Kansas City, Kansas.

s/ Carlos Murguia

**CARLOS MURGUIA**
**United States District Judge**